[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14885
Non-Argument Calendar
_____

Agency No. SE 2012-681-R

WARRIOR MET COAL MINING, LLC,

Petitioner,

versus

SECRETARY OF LABOR,
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION

Respondents.

_____

Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission
_____

(October 6, 2016)

Before HULL, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Warrior Met Coal Mining, LLC petitions for review of the Federal Mine Safety and Health Review Commission's decision to affirm an Administrative Law Judge's determination that a Mine Safety and Health Administration inspector was within his discretion in issuing an "imminent danger withdrawal order" to a mine operator under § 107(a) of the Mine Act, 30 U.S.C. § 817(a).  Warrior argues that the Commission erred in determining that the ALJ's decision was supported by substantial evidence.  After review of the record and the parties' briefs, we deny the petition and affirm the Commission's decision.

## I

Because we write for the parties, we assume their familiarity with the underlying record and facts, and recite only what is necessary to resolve this appeal.

After detecting a potentially explosive concentration of methane gas in a roof cavity of a coal mine operated by Jim Walter Resources, an MSHA inspector issued an imminent danger withdrawal order that required the temporary cessation (for about twenty minutes) of coal mining activities.  JWR contested the withdrawal order before an ALJ.  Following an evidentiary hearing that included the testimony of several witnesses and review of the parties' briefs, the ALJ determined that the MSHA inspector had not abused his discretion in issuing the withdrawal order.

2

In reaching his decision, the ALJ recognized that the "critical question in determining whether an accumulation of methane presents an imminent danger is whether there is an ignition source that might reasonably be expected to cause an explosion . . ." that could result in harm or serious injury to miners. *See* ALJ Decision, 36 FMSHRC 235, 240 (Jan. 2014). The ALJ noted that there was no dispute that there was a methane buildup in a roof cavity of the mine that was in the explosive range (above 5%). The ALJ then accepted only one of the four potential ignition sources identified by the inspector. Recognizing the conflicting testimony as to whether the ignition source—a Lo Trac vehicle routinely used to transport mining materials—could have entered the area near the roof cavity, the ALJ ultimately concluded that although the risk was remote, the inspector's decision to issue the withdrawal order was objectively reasonable.

Following the ALJ's decision, JRW petitioned for review before the Federal Mine Safety and Health Review Commission. In a split decision, a majority of the five-member Commission affirmed the ALJ's decision, determining that it was supported by substantial evidence. *See Secretary of Labor v. Jim Walter Resources, Inc.*, 37 FMSHRC 1968, 1969 (Sep. 2015). The two dissenting commissioners viewed the inspector's withdrawal order as premature because there was "clearly time to consider whether there was a reasonable expectation of injury

before abatement [of the methane concentration] could be completed . . . ." *See id.* at 1982. JWR appealed the Commission's decision.

During the pendency of this appeal, JWR filed for bankruptcy and Warrior purchased JWR's assets at a bankruptcy sale. As the current owner of the coal mine at issue in this appeal, Warrior petitions this Court for review of the Commission's decision to affirm the ALJ's findings.[1]

## II

We have jurisdiction to review a decision of the Commission under § 106(a)(1) of the Federal Mine Safety and Health Act, 30 U.S.C. § 816(a)(1). We review *de novo* the legal conclusions of the ALJ and the Commission. *See Sumpter v. Sec'y of Labor*, 763 F.3d 1292, 1299 (11th Cir. 2014). Findings of fact, however, are reviewed under the substantial evidence test. *See id*. *See also* 30 U.S.C. § 816(a)(1) ("The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive."). Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Sumpter*, 763 F.3d at 1299 (internal citation and quotation marks omitted). This limited review does not allow us to re-weigh the evidence or question an ALJ's credibility determinations. *See id.* at 1300.

---

[1] In June of 2016, a panel of this Court granted JWR's motion to substitute Warrior as the petitioner under Fed. R. App. P. 43(a).

**III**

The Mine Act authorizes the Secretary of Labor, largely through MSHA inspectors, to take preventative or remedial actions when certain conditions arise in a coal mine. *See generally* 30 U.S.C. §§ 813–817. This case concerns an inspector's authority to issue an imminent danger withdrawal order for mine workers under § 107(a) of the Act.

Notably, the Act begins with Congress' declaration that "the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource—the miner . . . ." 30 U.S.C. § 801. In accordance with this purpose, § 107(a) of the Act authorizes an inspector to issue a withdrawal order upon detection of an imminent danger during a mine inspection until the inspector determines that the "imminent danger and the conditions or practices which caused such imminent danger no longer exists." *See id.* at § 817(a). An "imminent danger" is defined as "the existence of any condition or practice in a coal or other mine which could reasonably be expected to cause death or serious physical harm before such condition or practice can be abated." *Id.* at § 802(j).

5

After reviewing the testimony of five witnesses and relevant provisions of the Mine Act regarding imminent dangers, the ALJ applied the two main factors for evaluating an "imminent danger" in a coal mine. The ALJ first highlighted the undisputed presence of methane gas in the explosive range. Next, the ALJ examined whether the inspector could identify a potential ignition source and agreed that the "Lo Trac [vehicle] [wa]s a mobile piece of machinery that can be reasonably expected to travel to various portions of the mine, including the [area where] . . . the buildup of methane remained in unremediated condition." *See* ALJ Decision, 36 FMSHRC at 243. The ALJ excluded three additional ignition sources based on their distance from the roof cavity and found (based on the mine operator's expert witness' testimony) that methane rapidly dissolves after it escapes from a roof cavity. *See id.* at 241–42. The ALJ nevertheless rejected the mine operator's argument that speed of methane dissolution alone negates the immediacy of a threat from an inspector's perspective. *See id.* at 244.

The ALJ then determined that there were sufficient objective reasons for the inspector to conclude that the Lo Trac vehicle could have entered the dangerous area and ignited the methane before it could have been diluted to a safe level. The ALJ noted the Lo Trac vehicle's mobility, the lack of enclosures to secure its electrical components, the proximity to the roof cavity, and the fact that the vehicle was "in an operable condition at the time of the issuance of the imminent danger

6

order." *See id.* at 243.  The ALJ further reasoned that "[t]he fact that the Lo Trac had been 'tagged out' for repair (not by order of the inspector but by mine authorities) [was] not dispositive" on the issue of whether it was likely that the Lo Trac vehicle could have entered the dangerous area.  *See id.*  In sum, the ALJ concluded that, from the inspector's perspective, nothing could have prevented the Lo Trac vehicle from being used to transport materials to mine workers near the dangerous roof cavity.

In reviewing the ALJ's opinion, a majority of the Commission began by recognizing two factors that influenced the inspector's decision.  *See Jim Walter Resources*, 37 FMSHRC at 1971–72.  First, the Lo Trac vehicle was a "non-permissible" piece of equipment—meaning that it lacked safety enclosures to prevent an explosion.[2]  Second, the inspector "knew that the Lo Trac [wa]s a mobile piece of equipment that commonly delivered materials" throughout the area near the roof cavity.  *See id.*  The majority cited the ALJ's conclusion that although the Lo Trac vehicle was tagged out (to fix a minor leak), none of the evidence indicated that the vehicle could not have been put back into use before the methane could be diluted.  *See id.* at 1970.  Acknowledging the inspector's awareness that the surrounding area was the source of some mining activity, the majority concluded that the ALJ's decision was supported by substantial evidence and that

---

[2] The Lo Trac vehicle had open electrical connections, an exposed alternator, and "frictional breaks that may cause sparks."  *See* ALJ Decision, 36 FMSHRC at 242.

"[i]t was reasonable for [the inspector] to surmise that the Lo Trac could wind up in a position where it could ignite the methane in the roof cavity." *See id.* at 1972–73.

Warrior encourages us to adopt the dissent's position that the ALJ erred because he failed to focus on whether the inspector made an objectively reasonable investigation of the facts before issuing the withdrawal order. The dissent reasoned that, in light of the statutory definition for "imminent danger" requiring a reasonable potential for injury "before such condition or practice can be abated," *see* 30 U.S.C. § 802(j), the inspector acted prematurely "[g]iven the obvious and nearby means for rapid abatement and the absence of any ignition source." *See id.* at 1982. We concur that the sufficiency of an inspector's investigation depends on the circumstances. We disagree, however, that the inspector's evaluation of the circumstances here was objectively unreasonable.

Warrior also points to another case where a unanimous Commission panel determined that an MSHA inspector had abused his discretion in issuing two withdrawal orders based on a single criterion. *See Secretary of Labor v. Cumberland Coal Resources,* 28 FMSHRC 545, 556 (Aug. 2006) (reversing an ALJ's decision because the inspector was advised to pre-write imminent danger orders "if he found more than 4.5% methane . . . preclud[ing] the inspector from conducting a requisite reasonable investigation of the facts in exercising his

8

discretion"). That case, however, is not helpful here. Unlike the situation in *Cumberland Coal*, where the inspector relied on the methane readings alone, the inspector in this case looked beyond the methane reading and specifically considered whether there was an ignition source that could potentially ignite the methane and cause injury to miners. Moreover, it was unclear whether the inspector in *Cumberland Coal* had properly identified methane concentrations in the explosive range. *See id.* at 557 (explaining that the inspector admitted he was unsure about the methane concentration in one of the areas where he issued an imminent danger order). The inspector's methane reading is undisputed here.

Warrior's principal argument is that alternate inferences from the facts—the mine's inactivity, lack of miners near the roof cavity, and the unlikelihood that the Lo Trac vehicle could have entered the area in time to ignite the methane—are case dispositive. Given the substantial evidence standard, we disagree. The inspector testified that he observed at least eight workers at the mine and that he knew the Lo Trac vehicle was mobile. Three workers testified that they were in the area near the roof cavity, including one miner who was directed to move the Lo Trac vehicle to a washing station nearby. A safety supervisor and a miners' representative were with the inspector when he found the methane buildup in the roof cavity. The fact that no coal was being produced in the area, alone, does not rule out the possibility of an imminent risk.

9

Importantly, the ALJ did not ignore the alternative inferences; rather, he determined that the inspector was within his discretion—by evaluating the circumstances at the time he issued the withdrawal order—to ensure the safety of the workers at the mine. The ALJ understood that the Lo Trac vehicle's risk of ignition was remote. Citing clothing static as an example, the ALJ said that ignition sources are speculative in nature. The ALJ explained that "when methane gathers in the explosive range, any spark is an ignition source . . . [thus,] [t]he issue [wa]s whether the inspector's decision to consider the possibility that the Lo Trac could [have] enter[ed] the crosscut and a spark therefrom could [have] ignite[d] the methane is a reasonable one." *See* ALJ Decision, 36 FMSHRC at 243.

The inspector's exercise of his discretion to issue a withdrawal order here caused mine operations to shut down for approximately twenty minutes until the methane inside the roof cavity was diluted to a safe level. The ALJ's decision demonstrates careful consideration of the factual circumstances in light of the witness testimony presented, and it supports the conclusion that the MSHA inspector did not abuse his discretion in issuing the withdrawal order. To hold otherwise would require us to re-weigh conflicting evidence and the ALJ's credibility determinations. We therefore agree with the Commission that the ALJ's decision was supported by substantial evidence.

**IV**

We affirm the Commission's decision and deny Warrior's petition.

**AFFIRMED**.